UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:22 CR 597 RLW ) |
| JEROME MIDDLETON, | ) ) ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the Defendant JEROME MIDDLETON ("defendant"), represented by defense counsel John Lynch, and the United States of America (hereinafter "government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A) and (B), Federal Rules of Criminal Procedure, in exchange for the Defendant's voluntary plea of guilty to: Distribution of a Controlled Substance, a lesser offense necessarily included in Count I of the Indictment, the government agrees that no further federal prosecution will be brought in this District relative to the events arising out of the indictment, of which the Government is aware at this time. The government further agrees to not

1

seek statutory enhancement of defendant's sentence pursuant to Title 21, United States Code, Section 851(a).

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. **The parties further agree that the defendant will request a sentence of no lower than 12 years in prison, and the Government will request a sentence of no more than 15 years in prison** The parties acknowledge and understand that this recommendation is not binding upon the Court, which has discretion to impose any sentence within the statutory penalty range.

Defendant acknowledges that this disposition confers upon him the benefit of eliminating the 20-year mandatory minimum sentence that would be required if he were to be convicted of Count I of the Indictment as currently charged. However, the parties agree that the controlled substance distributed by Defendant to M.H., was the "but for" cause of M.H.'s death. As a result, the plea agreement establishes a more serious offense than the "offense of conviction." Section 1B1.2(c) provides, "[a] plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the Defendant had been convicted of additional count(s) charging those [sic] offense(s)." Pursuant to Section 1B1.2, the parties agree that the Court should apply the guidelines applicable to the more serious offense as established herein and admitted under oath by Defendant. The parties recognize that the maximum possible penalty for Count I remains 20 years pursuant to Title 21, United States Code, Section 841(b)(1)(C).

### 3. ELEMENTS:

**COUNT ONE:** As to the lesser offense necessarily included in Count One of the Indictment, the Defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

    (i)    That on or about November 27, 2020, within the Eastern District of Missouri, the Defendant distributed fentanyl, a controlled substance, and;

    (ii)    That he did so knowingly and intentionally.

### 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

In the evening of November 27, 2020, Florissant police responded to a residence in Florissant, Missouri, to conduct a welfare check of victim M.H., at the request of family friends concerned for M.H. Police ultimately forced entry and found her deceased of a suspected overdose. A subsequent post-mortem examination and forensic toxicology analysis revealed the cause of M.H.'s death was fentanyl intoxication.

A search of M.H.'s cell phone revealed a Facebook contact with the name "Jerome Middleton" had been messaging with her via Facebook and the messages indicated he had responded to her location on November 23, 2020, November 24, 2020, November 25, 2020, and November 26, 2021 [handwritten: 2020] to supply her with narcotics. Middleton was the last person in contact with M.H., according to the examination of her cellphone and the applications on it.

3

Police sought and executed a warrant for the "Jerome Middleton" Facebook account that has been in contact with M.H. They located numerous messages relating to drug trafficking, including the messages with M.H. immediately prior to her death.

Middleton was arrested and interviewed on April 21, 2021. Investigators conducted an audio and video recorded interview, during which Middleton admitted to being a "runner" for people, meaning he would go purchase drugs for them. Middleton stated the benefit to him was that he would collect money from the person, go to get the drugs, bring the drugs back to them, and keep some drugs for himself. Middleton also admitted to knowing M.H. When confronted with his Facebook messages and informed that M.H. died from a fentanyl overdose, Middleton admitted he had traveled to the area of Palm and Euclid, in St. Louis City, and picked up six capsules of fentanyl. Middleton reported he kept three capsules for himself and gave three capsules to M.H.

Defendant acknowledges and admits that he knowingly participated in the distribution of fentanyl to M.H. on or about November 27, 2020, and that M.H. ingested the same. Defendant further acknowledges and admits that M.H.'s death was directly attributable to that fentanyl and that M.H. would not have died but for her ingestion of that fentanyl. Expert testimony in the event of trial would establish the same.

### 5. STATUTORY PENALTIES:

The Defendant fully understands that the maximum possible penalty provided by law for the crime to which the Defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $1,000,000.00, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than 3 years nor more than life.

4

## 6. U.S. SENTENCING GUIDELINES: 2021 MANUAL:

The Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

### a. Chapter 2 Offense Conduct:

**(1) Base Offense Level:** The parties agree that the base offense level is 38 pursuant to Section 2D1.1(a)(1) and 1B1.2; because the defendant was convicted under 21 U.S.C. § 841(b)(1)(C). The parties agree that the controlled substance distributed by Defendant was the "but for" cause of the death of M.H., resulting in the agreed Base Offense Level.

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: None.

### b. Chapter 3 Adjustments:

**(1) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the Defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the Defendant's intention to plead guilty. The parties agree that the Defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the Defendant which it believes are inconsistent with Defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the Defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2) Other Adjustments:** The parties agree that the following additional adjustments apply: None.

**c. Other Adjustment(s)/Disputed Adjustments:** None.

**d. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 35, unless Defendant is a Career Offender. Depending on the underlying offense and Defendant's criminal history, Defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds Defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category maybe as high as a Category VI.

**e. Criminal History:** The determination of the Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the Defendant's criminal history and the applicable category. The Defendant's criminal history is known to the Defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

### 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The Defendant has been fully apprised by defense counsel of the Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, including specifically motions to suppress evidence, discovery and the guilty plea, the constitutionality of the statute(s) to which Defendant is pleading guilty and whether Defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues, provided that the Court sentences the defendant to the parties' joint recommendation of between 144 and 180 months' imprisonment. Otherwise, the adversely affected party—the defendant if the sentence is higher or the Government if the sentence is lower—reserves the right to appeal sentencing issues, limited to claims that the Court: (1) misapplied Sentencing Guideline adjustments not specifically set forth in the plea agreement or failed to apply adjustments specifically set forth in the agreement; (2) miscalculated the defendant's criminal history category; or (3) imposed a substantively unreasonable sentence.

**b. Habeas Corpus:** The Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

7

**c. Right to Records:** The Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8. OTHER:

**a. Disclosures Required by the United States Probation Office:** The Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the Defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on the Defendant to which the Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The Defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the Defendant agrees to pay at the time of sentencing. Money paid by the Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution, and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The Defendant agrees that any fine imposed by the Court will be due and payable immediately. Pursuant to Title 18, Section 3663(a)(1)(A), the Court may order in addition to any other penalty authorized by law, that the defendant make restitution to the victim's estate. The parties agree that pursuant to Section 3663(b)(3), the defendant shall pay in restitution to the victim's estate an amount equal to the cost of necessary funeral and related services.

**g. Forfeiture:** The Defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The Defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the Defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest

the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The Defendant further understands that by this guilty plea, the Defendant expressly waives all the rights set forth in this paragraph.

The Defendant fully understands that the Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The Defendant's counsel has explained these rights and the consequences of the waiver of these rights. The Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The Defendant is fully satisfied with the representation received from defense counsel during every phase of the case, including the pre-trial motions stage. The Defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and

defense witnesses with defense counsel. The Defendant was fully advised of his right to file pre-trial motions and agreed and concurred in the decision not to raise any issues by way of pretrial motions. Defense counsel has completely and satisfactorily explored all areas which the Defendant has requested relative to the government's case and any defenses.

### 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the Defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the Defendant states that no person has, directly or indirectly, threatened or coerced the Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The Defendant further acknowledges that this guilty plea is made of the Defendant's own free will and that the Defendant is, in fact, guilty.

### 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if Defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the government, at its option, may be released from its obligations under this agreement. The government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported

by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement related to sentencing as set forth in paragraph 2 above and/or those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

5/31/23
Date

LISA M. YEMM, #64601MO
Assistant United States Attorney

5-31-23
Date

JEROME MIDDLETON
Defendant

5/31/23
Date

JOHN LYNCH
Attorney for Defendant

12